All right. The Illinois Public Court Third Division is now in session. The Honorable Justice Margaret S. McBride is presiding. Good morning, everyone. Please be seated. Both parties would, both attorneys that are going to argue, would step up to the podium and identify yourselves for the record. Katie Anderson on behalf of the appellant from the State Appellate Defender. Good morning, Ms. Anderson. Good morning. Good morning. Matthew Connors on behalf of the people of the State of Illinois. Mr. Connors, good morning to both of you. All right. Ms. Anderson, will each of you, we'll have about 15 minutes to argue. And from that, Ms. Anderson, you may save some time for rebuttal. I would like to reserve two minutes for rebuttal, Your Honors. All right. So with that, you may proceed. May it please the Court, my name is Katie Anderson, and on behalf of the State Appellate Defender, I represent the appellant, Mr. Stephen Dixon. This Court should remand Mr. Dixon's pro se post-conviction petition for second stage proceedings. The petition established the gist of an arguable claim of ineffective assistance of appellate counsel, because on direct appeal, counsel failed to argue that the testimony of Thomas Murchie, the State's blood spatter expert, lacked a proper foundation, even though this issue was properly preserved for review, and this claim had an arguable basis in both fact and law. But didn't they establish his qualifications and set up a foundation in terms of what he was going to testify to, and finally what his opinions were? They did establish his qualifications as an expert, Your Honor, and he was properly tendered as an expert. We're not challenging his qualifications as an expert on this appeal. We're arguing that there is an arguable basis to support a claim that some of his specific testimony and some of the conclusions that he drew was not properly supported with an adequate foundation. So we're challenging some of the things that he testified to, but not his qualifications as an expert witness. So isn't that really a weight of the evidence argued? Respectfully, Your Honor, this goes to admissibility, not weight, because expert testimony must have an adequate foundation. Right, but you just told us half a minute ago that you're not challenging the foundation for his expertise and that the lawyer, you're not arguing that the lawyer dropped the ball on his expertise. It's just that he didn't ask the questions or didn't pierce enough. Well, first, there's a difference between challenging the substance of testimony and the basis of the expert's qualifications. So we're challenging things that he testified to, not the fact that he was allowed to testify as an expert in the first place. Also, in terms of dropping the ball, it's … Isn't that really asking us to re-weigh evidence? No, we're asking this Court to determine if his post-conviction petition presented the gist of an arguable claim. But it has to be a constitutional claim. It has to be a constitutional claim. And if you're challenging the weight of the evidence and not the expert's foundation, because there was a foundation laid, the Court declared him an expert, there was no question about his qualifications. So these questions were going towards the substance of his testimony. It's really attacking the weight of the evidence. Respectfully, Your Honor, it goes to – we're arguing that it goes to the admissibility, not the weight. Because of the lack of foundation for some of his conclusions, that testimony should not have been admitted in the first place. And while trial counsel did thoroughly cross-examine the witness and point out many issues and discrepancies with his testimony, appellate counsel failed to raise this on direct appeal, even though there was clearly some sort of issue relating to the testimony. And even though Thomas Murchie's testimony was some of the most damaging evidence against Mixter Dixon, reasonable appellate counsel would have fully explored that issue and arguably raised the same claim on direct appeal. And I would like to talk a little bit more about Thomas Murchie's testimony and why that was so important that we need to talk about it now. So Thomas Murchie, he was arguably the key State's witness at Stephen Dixon's trial. The DNA results actually kind of – That is a question. Murchie has nothing to do with the DNA. Correct. And in this particular case, there was evidence under her fingernails, was there not? There was evidence under her fingernails. And who was that evidence connected to? There was DNA evidence under her fingernails that matched Mixter Dixon. However, it is well known and accepted that Mixter Dixon had some sort of physical contact with the victim immediately prior to the offense, which could explain the presence of his DNA under her fingernails. While the DNA expert – you are correct, the DNA expert – What testimony is in the record that would indicate that his DNA would be under her fingernails? The testimony that indicated his DNA was under her fingernails was the testimony from the DNA expert, which were not challenging. But the DNA expert also testified that it was not possible to determine whether this DNA came from blood or another source such as skin cells. Such as what? I'm sorry. Such as skin cells. Yes. So it's possible that the DNA under her fingernails, even though it was him, did not necessarily get under her fingernails as the result of a criminal offense, but because they were spending time together earlier that evening. And who really suggested that? Are you saying that expert testimony supported what you're arguing now? The DNA expert's testimony is not the basis of our argument. No, I understand. But you're arguing – you have to in some way dispel or discount this DNA because of the prong, the second prong of ineffective assistance of either trial or appellate counsel, and that is prejudice. And you're saying the linchpin of the case was the blood testimony. But at the same time, there was uncontroverted testimony about DNA. Right. But there was also uncontroverted testimony that Mr. Dixon was present with the victim prior to the offense, which also provides a reasonable and innocent explanation for the presence of that DNA. But what is that? You're saying that there's some evidence. What evidence was there that would suggest, you know, either via expert or the defense case, that the scrapings under her fingernails were because of some kind of contact? Who testified that would establish that? Why would the jury accept what you're arguing now when there's no plausible testimony that no one made that argument? The DNA expert could not definitively identify the presence of DNA. Either blood or skin cells, you said. Right. They couldn't identify specifically that it was blood. And because they were sitting next, they were possibly sitting next to each other, engaged in physical contact. But who would have testified to that fact? The expert never suggested that the cells, skin cells or blood, would have been under her fingernails because of sitting next to a person. The expert also did not definitively testify that the presence of his DNA was because, was through his blood like you are suggesting. No, I understand that. But you're making an argument that would actually require probably expert testimony. And that testimony was never in this record. There's no testimony to suggest that sitting next to someone would result in skin cells and or blood under her fingernails. That is correct. But because they were in contact with each other and spending time together and touching the same things, that could account for the presence of his DNA under her fingernails. What about the state's argument that even if you don't consider the blood analysis, etc., test, evidence, I'm sorry, they still had enough to convict her? The issue here, Your Honor, is not whether the state had enough evidence to convict. The issue here goes to what appellate counsel did or, more specifically, did not do. And in this case, what direct appeal counsel failed to do was challenge the state's most significant evidence against Mr. Dixon on direct appeal, even though that had been challenged in the trial. Excuse me, but where's the prejudice? I mean, if they had enough to convict her, whether or not appellate counsel argued it or not, I mean, where's the prejudice here? The prejudice against Mr. Dixon is because the testimony of the blood spatter expert was extremely significant and very damaging to his case. And you don't think, you think that you can argue to us that DNA evidence doesn't trump blood spatter testimony? It's not about DNA trumping blood spatter or blood spatter trumping DNA. It's about the fact that the DNA alone does not present the full picture. If the state thought that the DNA alone... Okay, go ahead. Go ahead. I'm sorry. But if the state thought that the DNA alone presented the full picture and was enough to convict, why would they have spent all of this money and gone through all of this trouble to get this blood spatter analysis done and present... Because that's their obligation to the people of the state of Illinois, to present their best, strongest case. And there's other evidence besides the DNA and then the blood spatter. And when we're talking about people's jobs in this case, it was direct appellate counsel's job in this case to thoroughly litigate all possible avenues on appeal, including challenging the strongest evidence against my client. Right. And you're saying it was the blood spatter where there are many that would argue that the DNA evidence was overwhelming in terms of convicting him. Because we do have his DNA under her fingernails, which you think a jury would assume, well, that happened because they were sitting next to each other. And I don't think that that was ever suggested, and I think it would require expert testimony. The bottom line, though, is that all the DNA can do is place him at the scene of the offense. And that is something that he has always admitted to. He has admitted since day one that he was present in her apartment during the offense, even though there is no other witness that testified to that. He's admitted that since day one. The blood spatter. Was there any evidence in the case that this was a forced entry? There was possibly evidence that would indicate that because we know that the back door to her apartment was open. Sure, but it wasn't forced open. Right. So, I mean, it's really. Was there any evidence of a forced entry, like this intruder that the defendant suggested came upon them? To my recollection, the only possible evidence that could indicate forced entry was the state of the door. And I must admit, I don't recall whether that was broken or propped open when people first entered her apartment after the offense. You know, we should probably talk about the two singular cases that you're relying on. They've been rejected. One of them was vacated by the Illinois Supreme Court. And in your reply brief, you suggest that we should consider a case that has been vacated by a supervisory order, even though the Illinois Supreme Court has told us that we cannot consider any decision that has been vacated. That's actual authority that's binding on us. So how do you respond to that? The import of that case is that it illustrates the arguments that direct appellate counsel was making on the time of direct appeal. So the import of that case is we're not saying this court should follow that case as binding. You only cite two cases, one that's been thoroughly dismissed by this court and others, and then the case that had a supervisory order entered in it. And you rely on it as authority, but it actually isn't authority. So to answer my question, how should we even consider the cases that you only have two and one has been thoroughly dismissed and the other is the one with the supervisory order? So aren't we going to be doing something we're not allowed to do, relying on authority that has been vacated, and that the cases say that appellate courts, limited courts of review, cannot rely on decisions that we have vacated, the Supreme Court, the Illinois Supreme Court? First, the relevance of Jones is it illustrates that on direct appeal, around the time that this same direct appeal was pending, appellate counsel's on direct appeal were raising foundational challenges to the admission of forensic evidence, similar to the foundational challenge that appellate counsel did not make in this specific case. So that's the only relevance of Jones, is that it illustrates that there was, in fact, at the time of the direct appeal, case law support for counsel to raise this in Jones. Jones has since been proud of it. But I guess I'm not getting my question answered. That case was vacated by a supervisory order, but you're still saying it's something that we should rely on, because it was available when appellate counsel filed a brief. It shows that appellate counsel could have made this argument, but simply chose not to. And it also shows, because direct appellate counsel in Jones was able to raise a foundational argument to the forensics, counsel in this case could have also raised a similar challenge. Simply because case law might represent a minority view, counsel's choice not to raise an argument on direct appeal may still be erroneous, even where the admitted argument relies on a minority view, like it arguably did in this case. So we're conceding that Safford and Jones were a minority view, but that does not negate counsel's argument to fully explore that possible avenue of relief for Mr. Dixon on direct appeal. And in order for this case to go back to second stage proceedings, this Court does not have to believe that that claim would have definitively have been meritorious. This Court only needs to... It's just that it was arguably correct, ineffective, or the first prong is only arguable and as well for prejudice. That it's arguable. That is correct, Your Honor. So it is a very low bar at this stage. And it should be remanded for second stage proceedings so that someone could take a look at this in more detail. And possibly even it's my understanding that at second and third stage proceedings, it's common to call appellate counsel to testify and explain, you know, why he or she did not raise a particular issue. At this stage, we only have to establish that there was an arguable basis in the facts and in the case law. If you took out the Murchie testimony as far as love spatter, you still have the blood, don't you? You still have the presence of the DNA at the crime scene. That is correct. And her blood is on his pants. Isn't that true? Yes, but that is... So apart from the fingernails, you have her blood on his right pant leg, correct? Correct. And you have her blood on his right shoe, don't you? Correct. So we don't just have the fingernail clippings here, right? Correct. We have DNA that says that her blood is under his fingernails. But we have blood on his pants and shoes, and there's a pathologist report, isn't there? That is correct, Your Honor. And that report indicates that this was a severe beating, that there was blunt trauma, doesn't it? Yes, and I... Isn't that part of the state's case? Yes, and I'm actually glad that you brought that up. I wanted to talk about Murchie's testimony about the blunt trauma. So Murchie testified about a lot of different conclusions that he reached about the blood spatter and how it ended up where he ended up. But I'm saying remove Murchie. A jury has her blood all over his pant legs. A jury hears her blood is on his shoe, and she was kicked. Are you saying the pathologist report doesn't suggest blunt trauma to that woman's head? Her teeth were knocked out, weren't they? The pathologist report... Several of her teeth were found. The pathologist report certainly suggests blunt trauma. However, he testified his version of events was that after he was attacked by the intruder, he woke up and he then went over to Tiffany while she was still bleeding. So his blood on her pants and shoes are actually consistent with his version of events. Give me more on that thought. So he testified that he went over and that he kneeled by her and checked on her to see how she was doing. Oh, that's another thing. Wasn't there... Wasn't... What was the thing with the handle in her neck, the knife handle? What blood was there? On the knife handle on her neck, that was a... I believe that was a mixture of her DNA and his DNA. Right. I do know that definitively his DNA was found on that. But he did have an explanation for that. Correct. He said he tried to pull the knife out of her neck. Correct. And that it... I believe he said that the knife handle spurted or her mouth spurted and he tried to remove it and there was some sort of spurting at that point. So that explained how her blood was on that handle. Correct. And that also, again, would explain how her blood was on his pants and shoes. It was a... But, okay, so Murchie did have to at least testify to the amount of blood. But without him testifying about that, there was DNA analysis of that blood without Murchie. Correct. And he, right after this, he left, right? Mr. Dixon? Yes. Yes, that is... He went home. Correct. Mother took him to the hospital. He never called for any help. Nothing like that. That's all evidence against him. Yes. And we will concede... And he fled the state for years, didn't he? He left the state for years. I don't recall the timing of when he left in relation to... Right. I don't either. Go ahead. So I wouldn't necessarily say that he fled without checking the facts. You are correct. He did leave afterwards and he did not seek any help except for going to get his parents. That is possibly explained by the fact that he said that he was a drug dealer, but quite frankly, Your Honor, he was 16 years old at the time and... There was also a suggestion of a motive here, wasn't there? Well, he was having sexual contact with this young woman and then his girlfriend, who later gave birth to a child, that was his child, right? Yes. And he said that he didn't think she knew about this. Correct. So these are all facts, though, that go back to this question of prejudice. You're saying that even if we take Murchie out, this is basically a very weak case. Yes. I am saying that once you remove Thomas Murchie's testimony, it is at least arguable that the jury may have reached a different conclusion. And what case would you actually base that on? I mean, this is kind of an unusual situation. It's very rare to have DNA and then you've got splatter and then you've got a defendant who says, well, somebody came upon us, but I left. I wanted to take care of myself. And then he leaves the state and then he's got an explanation for everything. But you're saying that this is like some run-of-the-mill case? No, I'm not saying that. You're saying that it's arguable that a different outcome would have taken place. Okay, so give me a case where you think this kind of evidence would have resulted in a different outcome. Another jury, without hearing Murchie, would find him not guilty. Respectfully, Your Honor, because each sufficiency of the evidence case is so fact-specific and because this case is so unique, I am unable to cite a sufficiency of the evidence case that is precisely on point. And if you really are arguing sufficiency of the evidence, you've said that you're attacking Murchie for his qualifications and that some of his questions are the evidence was inadmissible or should have been, right? But if you're really arguing a sufficiency of the evidence case, if we conclude this is a weight evidence, that's not a constitutional claim. We are not arguing this is a sufficiency of the evidence case. No, I know you aren't. But I'm just saying if we take your suggestions that the complaints you're making about Murchie are really foundational as opposed to admissibility, one is a constitutional claim, the other is a sufficiency reasonable doubt argument. Respectfully, Your Honor, in his petition, my client didn't raise a reasonable doubt. No, I know that. I know. I'm throwing it out to you that if we interpret this as a weight, the State argues that, don't they? They argue you're making a weight argument. Correct. The State argues that this goes to weight, and we argue that this goes to admissibility because of the lack of foundation. All right. Do you wish to make any further arguments? We are going to give you time for a little. I would just like to point out that Thomas Murchie made a lot of conclusions in his testimony. He drew many conclusions. But on cross-examination, he kind of clarified the purpose of his report. He said that, quote, Through my training and education in the subject matter, we're determining direction and angle of impact. That's all we're trying to determine, end quote. And that's on the record at page 829. And that, I think, illustrates a lot of the problems that we see with Thomas Murchie's testimony, is because the conclusions that he drew went far beyond direction and angle of impact. For example, when he stated that the stains on the pants and shoes must have been impact stains that couldn't have been made by incidental contact, and instead were caused by blunt force trauma with human strength. That goes beyond his own stated training and education in the subject matter to determine the direction and angle of impact. So that goes to the larger foundational challenge with his testimony that we're trying to raise, is that, quite frankly, not all of his conclusions were supported, and there were foundational issues with them. Thank you. All right, Ms. Sanderson. Thank you. We'll let you have some time to rebuttal. Patrick. Good morning. Members of the Court, Matthew Connors on behalf of the people of the State of Illinois. It's the case position that the Circuit Court properly dismissed the filing of the first stage because Petitioner failed to raise the gist of a constitutional violation alleging ineffective assistance of appellate counsel. The claim solely fails because Petitioner cannot demonstrate that appellate counsel's decision not to raise this claim in 2015 when the case was originally briefed, or, excuse me, prior to 2018 when the case was originally briefed, would have been meritorious. There's three primary flaws with that. First, as Justice Breyer, as you noted, the only authority that's been put forth so far is Jones, which, again, the Court knows was vacated in 2015, approximately two months after the notice of appeal was filed. So we know that prior to even filing the brief, appellate counsel knew that Jones was not good law, could not be cited. Moreover, the other case relied upon that, again, the Court's noted has been thoroughly rejected, was decided in 2012, and there have been three cases subsequent to that, two by this Court specifically saying that the Safra case is, quote, an outlier in courts who refuse to follow it. So at the time of the briefing of this case, appellate counsel was well aware that all of the authority weighed against her. I mean, weighed against making an argument. But there's no argument by you. Is there that the argument on appeal is that this witness was not qualified? I mean, they're saying that that's not the real argument, but that the testimony lacked foundation. And if the testimony truly lacked foundation, then it shouldn't have been admitted. So it is an admissibility issue. And I don't know that the cases, I don't think they're authority, but I don't think that the argument is inappropriate. The argument has been rejected. And the people will point to, as I cited in their brief, People v. Simmons, this Court specifically stated that questions regarding the expert witness's opinion goes to the weight of the expert court, of the expert testimony. This Court was well aware of the number of criminal cases where we get a battle of experts. Two parties will bring in an expert and both say, I tested this evidence. I came to this determination. All right. So what does it mean, then, that this is a question of weight in terms of post-conviction law? It means it is not a constitutional violation in and of itself. And do you clearly say that in your brief? Your Honor, I do not believe that that argument was studied because we were responding to the constitutional claim, which was ineffective assistance of counsel. That's the hook to get into the Post-Conviction Hearing Act. Of course it is. But at the same time, the ineffective assistance is not really the claim here. I mean, it is the claim, but in order to have the ineffective assistance, I don't think it's enough for you to say, well, this is a weight argument. An ineffective assistance claim has to have at its base a constitutional claim. And so the weight of the evidence is not a constitutional claim, even if it is couched in terms of ineffective assistance. That would be correct, Your Honor. And also it would be satisfied by law of the case, because in this case we've already had a weight of the evidence argument that was resolved on direct appeal. Well, you don't argue that in your brief either. No, because, again, the response of the people's brief was to the argument which was presented, which was counsel was ineffective, and the people's brief was formulated along the lines of, in order for counsel to, I mean, for a petitioner to meet the burden in this case, it had to prove that the underlying issue was meritorious. That's right. So the characterization of this as a weight issue, as a constitutional deprivation, is not how the issue was presented. And so the people's response was any claim attacking the investigator's testimony would not have been successful based upon, one, the lack of binding or the lack of any authority practically that has not been rejected by this court. Two, lack of – it's contradicted by the record, because there was specific statements by Investigator Murtry regarding why he chose not to engage in the case. He said that the blood dropped from a certain angle based upon the trail of the blood splatter. And the jury heard this. The jury was given the opportunity to evaluate whether or not they chose to believe this testimony, because he explained the logic behind it. Furthermore, counsel has gotten before this court and in the brief made the same argument. This is, quote, the lynchpin of the people's case. And tell us why it wasn't. Well, it's demonstrated by the fact that the people didn't even discuss it in their opening argument at the time of the jury trial. It was only brought up by defense counsel in their rebuttal, in their argument. And then the prosecutor actually talked about Investigator Murtry and talked about how he wasn't the most eloquent witness. It defies logic for the people to say that the most important person in their case is not an eloquent witness and you should probably pay attention to the other stuff. That's precisely what happened here. I would also note that in denying the – I mean, it's sentencing. The circuit court, in mentioning the sentence against Petitioner, didn't even mention the investigator's testimony. It talked about the primacy of the DNA evidence. And while counsel has argued before this court explicitly that DNA evidence only puts counsel – puts defendant at the scene, that's not really true because the blood – the presence of blood, especially on defendant's shoes, which at page 885 of the record, he claimed that he was not wearing when he went to go check on Tiffany while she was dying, contradicts the defendant's narrative, which was, I was standing there over her, all I had was my pants on, and blood spurted out of her mouth. Well, the presence of blood down the defendant's pant legs and on the defendant's shoes does more than put him at the scene. It negates defendant's testimony. So we have not only an inconsistent narrative provided by defendant where he fled the scene, didn't really recall much of any description of his attacker, but also we have blood evidence, even without the investigator's testimony, contradicting his claim. So the notion that the lynchpin of the people's case was something that they really – was something that they didn't really rely upon to the extent that the court believed. What about the argument also that the – I mean, the obvious answer is it's an obligation, but the argument that, you know, the state spent so much money and time and effort in presenting Murchie that it must have been the lynchpin of the state's case. It's a bit reductive to say, but for this then that we know that this was the court case. We know that the murder occurred in 1991. The trial was until 2015, and in fact the DNA evidence was not available in 1991 when the crime occurred. So subsequent in that 25-year span, that's when all the technology came forth. So it would behoove the people to investigate a murder to investigate all the possible leads. And they did so in this case by not just presenting blood splatter technology, but by actually reaching out and getting DNA analysis. And it's that DNA analysis which really served to restart the cold case. The DNA analysis was obviously cited by this court on direct appeal. It was recited by all the parties below. And it really does stand sharply in contrast with the defendant's narrative, which was he was just there, woken up, engaged in a wrestling match, and then left. The people pointed out in closing argument at trial that the DNA evidence was simply inconsistent with defendant's theory of the case. And that is the telling reference in the people's closing arguments. Because they talked about the strongest evidence, which was that DNA, which really did negate the thought that he was just laying on the ground next to the victim. Let's see if there are no further questions. If people ask this court to affirm the judgment of the circuit. All right. Thank you very much. We'll hear from Ms. Anderson again. All right. I have just a couple quick points on rebuttal. And I will try to be brief. As to the argument that we have relied on only two cases. First of all, it only takes one case with a valid legal. It only takes one case to establish that there was a valid legal theory that counsel could have used on direct appeal. Because counsel is obligated to raise an argument, even one that relies on a minority view. But second, we did rely on more than two cases. In our brief, we did string site a list of cases where direct appeal counsel challenged the admissibility of expert testimony based on lack of proper foundation in our opening brief. We string cited People v. Simmons, which was a 2016 case from this court. People v. Harmon, which is a 2003. Didn't we reject Stafford in Simmons? I don't recall off the top of my head. But the key to Simmons would be that it illustrates that reasonable appellate counsel was raising these arguments and making these claims. And that's the gist of our claim. Is that other direct appeal counsels were raising this argument and direct appeal counsel in this case should have done so. It should have followed that case law and also followed the road map that trial counsel made in the trial court by strenuously objecting and fully preserving the issue for appeal. Second, the rules of evidence do require that an expert lay an adequate foundation for admission of their opinion. So that's why we're arguing that this goes to admissibility, not weight. Also, we do acknowledge that there was a bit of a contradiction in terms of when Mr. Dixon put his shoes on with everything that was going on. However, that discrepancy is more of a minor detail, particularly when he's put his shoes on is precisely the type of detail where there might be a discrepancy. But the weight of that discrepancy is something for the jury to weigh. Also, the state talks about them mentioning the DNA evidence. But really, in opening, they don't specifically talk about the DNA evidence. They talk only about the blood will be a witness. Therefore, I think the state's theory in both opening and closing talked about the blood evidence in general overall, which does indicate the importance of the blood spatter testimony to this case. And regarding the DNA evidence, her blood being on his pants, that only told us what we all already knew, that it was her blood on his pants because he's present and that he did actions like kneeling next to her and standing next to her that would have accounted for the blood on his pants. Quite frankly, I think it would be more surprising if that was not her blood on his pants, given his stated version of the event. So in that respect, the DNA really only told us what we already knew. If this court does not have any further questions, we would like to briefly conclude, even though this issue was fully preserved, arguably meritorious and supported by case law, appellate counsel did not raise any issues related to the blood spatter testimony on appeal. And as Dixon argued in his pro se petition, counsel's failure arguably constitutes ineffective assistance of appellate counsel, and this court should remand for second stage proceedings. Thank you. Thank you both for your arguments today. The matter will be taken under advisement. The court will be in recess until we call the next case for oral arguments.